# Exhibit 2

*United States v. Litzenburg*
Partial Transcript of October 31, 2019 Call
Participants: Timothy Litzenburg; Attorney 1; Attorney 2

[00:12:16]
Timothy:        Hey, this is Timothy.

[00:12:16]
Attorney 1:     Hey.

[00:12:18]
Attorney 2:     Hi, Timothy. How are you? This is [Attorney 2].

[00:12:22]
Timothy:        Hey, good. Uh, good to hear from you. Boy, we are on really different parts of the day right now, aren't we?

[00:12:28]
Attorney 2:     [Laughs] That's alright. That's alright.

[00:12:30]
Attorney 1:     That is true.

[00:12:30]
Attorney 2:     [Attorney 1] is joining me as well.

[00:12:33]
Timothy:        Good.

[00:12:33]
Attorney 1:     Uh, hey, Timothy.

[. . .]

[00:14:14]
Attorney 2:     Okay, got it. Got it, got it, got it. So, I wanna make sure I fully understand. And I really appreciate you, um, putting it in writing, which allowed me without the…the benefit of wandering off or not fully understanding, uh, what you were proposing. That you were able to put that in writing for us by email last week, I believe. Uh, and…

[00:14:37]
Timothy:        Well, give the thanks to [Attorney 1]. She…she a…she insisted on it. I said, "Are you sure you want me to put all that down?" And she insisted on it. And I think it helped.

[00:14:45]

1

*United States v. Litzenburg*
Partial Transcript of October 31, 2019 Call
Participants: Timothy Litzenburg; Attorney 1; Attorney 2

| | |
|---|---|
| Attorney 2: | No, it…it did help a lot. And so I wanna make sure I understand the…the two options. You and I talked about them yesterday. Um, first option was a settlement exclusively with the current plaintiff at five million dollars. Um, and that would result in a full release with regard to that plaintiff. But it leaves open the…the question of other plaintiffs. Uh, and then what I referred to yesterday on our phone call was a more global settlement or global approach to resolution. Um, which would… |
| [00:15:17] Timothy: | Right. |
| [00:15:17] Attorney 2: | ==The 200 million dollar figure==. I got some questions today, um, from the client and from…from [Company 2] as to how we…how you arrived at that number. Uh, and I told him, "Listen, this is not a…a… We've been told, uh, by you that this is not an exercise in positional bargaining." So, wanted to…to get a sense from the…just so I can satisfy my client, how you arrived at that figure. |
| [00:15:48] Timothy: | Uh, sure. Here is how I look at it. It's opportunity loss. And, you know, I'm just gonna be blunt about all this. I feel responsible for the roundup litigation. When I was an associate, I walked away from a small bonus to start my own firm. Mostly the work had already been done. We're going to do okay. We're gonna do very well off of it. But not like, uh, you know, the share of it that I should have gotten. Um, so, you know, we're…we're considering a round up, too. Uh, this lines up quite nicely. For some reason, nobody else out there has thought of it at all. Um, and so we're looking at that figure as being, um, almost certainly less than what we would get going forward and litigating for five years or however long it was. So, our retainers are 40%. Sometimes we pay referral fees. So, let's say we get 33% of what a client recovers. |

[. . .]

| | |
|---|---|
| [00:20:36] Attorney 2: | Okay. So, I…I guess again, it… So, I'm dealing with investors. I'm dealing with, uh, CEO's and folks who run hedge funds, and venture capital, uh, funds. And they want to better appreciate the build up that goes into the amount that they're being asked to pay. And…and I guess…and…and I don't want to overgeneralize it. I…I certainly don't wanna misrepresent you. 200 do…200 million dollars is…is a conservative number that you're using that is litigation avoidance cost and cost to make you and your partner [Inaudible 00:21:13] Is… Am I understanding that correctly? |
| [00:21:15] Timothy: | Yeah, I think it's an extraordinarily…I think it's lower than the extraordinarily low end estimate of what [REDACTED] and I would make total off this litigation. And that doesn't count of course anybody else that filed nay other cases. Now, in terms of what your |

2

*United States v. Litzenburg*
Partial Transcript of October 31, 2019 Call
Participants: Timothy Litzenburg; Attorney 1; Attorney 2

|  |  |
|---|---|
|  | client wants, I mean, that's what we need to talk about on these phone calls. Not what I want. It's simple. But, um, obviously you guys wanna bu…buy finality. I…and I understand that. And, um, that was what led to our [Inaudible 00:21:43] not to file this at all. You guys wanted the finality. And for you to spend any money on it, it bought you complete, uh, sleep at night over this issue for…uh, infinitum. And, you know, we're prepared to discuss ideas on that. Um, my gut sense, which is usually right, is that nobody else was ever gonna figure this out or bother with it. And once Monsanto, um, payments come and go, nobody is ever gonna bother with this kinda stuff again. But we have some ideas. ==And surely you have some ideas about how to sort of ensure that…that it doesn't happen. Um, you know, right now, of course, there is no record anywhere in the public whatsoever.== |
| [00:22:28] Attorney 2: | Okay. So, I think [Attorney 1] and I have some questions about the specific mechanics of the settlement agreement now that I have, um, a better understanding of how you did, uh, not a cost buildup but how you quantified, um, the…the demand that's…that's here. [Attorney 1], do you wanna just start off with some of the questions…? |
| [00:22:49] Timothy: | Yeah, and let me just add this. Let me add… Can I…can I add this? You know, that's… The way I talked about it with the buildup sort of from our side… ==The way that I guess you guys will think about it and we've thought about it too is savings for your side. I don't think if this gets filed and turns into mass tort, even if you guys win cases and drive value down . . . I don't think there's any way you get out of it for less than a billion dollars. And so, you know, to me, uh, this is a fire sale price that you guys should consider, uh, you know, for a limited time.== |
| [00:23:17] Attorney 2: | And to be clear, the money is not going into an individual plaintiff's compensation fund or anything like that. This is money that's going straight to you and your partners, correct? |
| [00:23:30] Timothy: | Well, this is what, you know… We have to carefully, um, uh…we have to carefully research everything. But we have already been doing so with some of the top ethics lawyers and big firms already, asking some general questions about this. And we have been studying and going over our own retainer, which is a very favorable one. And it is our analysis [Inaudible 00:23:53] retainer Virginia Law and actually American Bar sort of standard law that we have no obligation at this time to, um, recommend to our clients to, uh, add [Company 1] into a suit, uh, because of manufacturers I've laid out for you before. That doesn't mean we're prohibited from doing it, but we think very strongly that we have no obligation to do so whatsoever. And now I, you know… If you wanted to pay 600 million dollars to get a bunch of releases, then sure… I'd be happy to do that, too. I assume that the more plaintiffs that are signing releases that, you know, the less you think it will work. And so the idea, you know, would be to first of all, you know, make there be no conflict whatsoever. And then second, um, uh, cause us to be |

3

*United States v. Litzenburg*
Partial Transcript of October 31, 2019 Call
Participants: Timothy Litzenburg; Attorney 1; Attorney 2

conflicted [Inaudible 00:24:45], um, potentially via our related group where we could actually, um, not only be conflicted but advise you on how to avoid, um, future mass tort litigation exposure and even related companies, etc., etc.

[. . .]

[00:27:08]
Attorney 2:   No, I…I guess… Yeah, that was the other question that the client posed, uh, to us today. Because we did… I…I made it clear to them that the 200 million dollars is a global settlement, and we'll take the form of a consultancy. And so the question raised by them, thinking about it the way they work with us, is to say, "Wow, for 200 million dollars, how much time, and what product, and what are we getting from Mr. Litzenburg and his colleagues on this front?" Um, let's say no suits every get filed. Is…is he still working for us on things? What…what is…?" And…and…and if suits do get filed, what does that consultancy turn into? Um…

[00:27:53]
Timothy:   Right.

[00:27:53]
Attorney 2:   You know, obviously about how do we prevent suits from getting filed.

[00:27:57]
Timothy:   Right. And so there's a lot of different scenarios. Once we're not conflicted from you and actually have a duty to you, I think we can advise you very closely on how to avoid suits. I think we'd have to watch the ethical line very carefully. But I think we can talk to people we knew, if they were ever thinking of going that route. I think [REDACTED] is gonna be a real asset there. Anybody thinking of file a mass tort in Chicago is gonna come to [REDACTED]. And if he says, "We thought about that. We thought it was a terrible idea. Move on," um, you know, my line I think would be, "Look, we wouldn't have… We couldn't find a toxicologist to say that bo…you know, one point per million was enough EO to cause cancer, so we had everything we needed [Inaudible 00:28:41] so why go down that road?"

Of course I've explained to you guys what I think I win with juries is on causation, but nobody else is gonna figure that stuff out. Um, and I think the likelihood that people come to me or [REDACTED] first, uh, before even going down that road is pretty…is pretty high. Now, you know, we have to look at what's ethical and what we'd have to disclose or anything like that. But, you know, that is another idea is, um…is you could, you know…we can try sort of mediating, setting a…a high/low or something. Once there is some motion, uh, pre suit and…and making it true that we've really discussed this. We've thought about the ups and downs. And you guys thought it best to have finality on this and try to, uh, take away what you believe to be the universality of the problem.

Um, and, you know, in turn, um, you know, we would be willing to… I'm not sure. I mean, there is some ideas out there. I don't think you should file…I don't think we

4

*United States v. Litzenburg*
Partial Transcript of October 31, 2019 Call
Participants: Timothy Litzenburg; Attorney 1; Attorney 2

    should file the suit. I think that's bad for you. You know, and if we did, we could, you know, do an unopposed summary judgement or something. I don't think that's a good idea. But there's some other ideas like, um, you know, again… You could, um… I don't know. ==You could forward your own toxicology experts or something at a pre, uh, trial, um, deposition. I mean, a pre suit deposition as part of some sort of, you know, negotiation with a pre suit. And we ask the wrong questions==. You know, we ask the wrong questions, and we have a high/low. Right? So, I mean, this is very creative and off the top of my head. So, we have a high/low.

    And it's…it's…it's, you know, um, for the [Inaudible 00:30:29] case. Okay? And it's, uh, 5 and 15. And we go in there and ask your toxicologist [Inaudible 00:30:35] and whatever. Um, and ask him, "Well, how about this much EO? But how about this EO over ten years? But how much with propylene oxide, and how…and what for dioxin?" Well… But, you know, um…you know, take away the [Inaudible 00:30:51] and forget about that for a minute. And if you still don't think that that's enough substantially or whatever, just ask the wrong questions. Not get to the right questions. And then kind of look defeated. You would have a…you would have a deposition transcript where I basically got whacked, um, but did nothing. Um, and…and [Inaudible 00:31:09] because she was telling the true answers, etc. And that could sort of be something that you kept in a vault somewhere to pull out if you ever got bothered by someone that didn't know me or whatever.

[00:31:23]
Attorney 2:    Okay. I think I understand what you're…what you're proposing. I think I understand.

[Crosstalk 00:31:28]

[00:31:28]
Timothy:    I mean, there are ways…there are ways I think…there are ways, I think, that we could almost sort of ==take a dive== as long as it's legal, and ethical, and best for our one client. Um, but that, you know, makes it so that if anybody ever bothers you totally independent of me and [REDACTED], uh, has this idea totally independently, you can say, "Look, man, like, some of the best lawyers on this litigation came down that road. And, uh, I can tell you they gave up real quick."

[. . .]

[01:08:36]
Timothy:    Okay.

[01:08:37]
Attorney 2:    Uh, about getting…getting ready.

[01:08:41]
Timothy:    Sounds great. Well, um, yeah, appreciate you making this happen. And, uh, all is forgiven with the Halloween cancellations. And, uh…and we'll see you guys on…on the

*United States v. Litzenburg*
Partial Transcript of October 31, 2019 Call
Participants: Timothy Litzenburg; Attorney 1; Attorney 2

        12th. And again, I'm sure we'll be in touch in between. Don't…don't hesitate to ask me any questions.

[01:08:56]
Attorney 2: We…we will certainly take you up on that offer. Thank you so much. Have a good evening. Enjoy, uh, Halloween with the kids.

[Crosstalk 01:08:59]

[01:09:01]
Timothy: Thank you. Thank you.

[01:09:01]
Attorney 2: And we'll talk to you soon.

[01:09:03]
Timothy: Thanks, guys.

[01:09:05]
Attorney 2: Bye, bye.