# Exhibit 4

| | |
|---|---|
| **From:** | Timothy Litzenburg |
| **Sent:** | Thursday, November 14, 2019 10:39 PM |
| **To:** | |
| **Cc:** | Kincheloe, Daniel |
| **Subject:** | Consult |

**- External Email -**

Counsel,

==We have discussed, in general terms, the idea of a potential consulting relationship== with ▮▮▮▮▮ if and when I have no conflicts. I propose the following rough structure:

First, if and when conflicts are resolved, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I will explain some subtleties to that on our Friday call.

Next, given the above, I would suggest that Dan and I consult for an entity other than that which owns ▮▮▮▮▮▮▮▮▮▮, but it is entirely up to your client to discuss and ultimately decide, what entity engages my consulting firm. Frankly, I may be willing to go as high up the chain as ▮▮▮ likes; this would in turn conflict me out of increasingly more work, so let's discuss. But, as I said before, this all accomplishes my primary goal of trying to make the biggest global impact I can.

==The price has been discussed.== The relationship would begin on execution of agreement, which can be accomplished when I have no conflicts, with full payment contemplated on Jan 2, 2020. In exchange for consulting fees to our business Golden Ratio LLC, we would agree to the following, if desired.

We will advise ▮▮▮ and its subsidiaries/related entities on risk mitigation and loss avoidance with respect to litigation, especially mass product torts. This would be on an ad hoc basis. I expect that you would set a primary point of contact, perhaps general counsel for the parent group, but I would work individually with house counsel for the company in question and executives, as needed. I would be conflicted out, therefore, from pursuing anything potentially adverse to my consulting clients' interests. For discontinued products/events that are in the past but present potential problems, I will work to identify them and develop strategy to avoid any notice by plaintiff lawyers, or to arrange something creative such as a private settlement that would deter later litigants. If the problem is a current or future one, my advice would be in line with my life goals; to protect global health. I might advise, for example, that a company switch from a toxic ingredient, whether exempted from labelling or not, to a similar safer one. I may advise labelling to avoid a failure to warn claim.

Within the bounds of legality and ethics, I could work to influence my peers to not pursue something adverse to ▮▮▮. If a valid unavoidable claim comes up, I am certain I can get it into the hands of a non-conflicted excellent attorney who would maintain strict confidence and offer to settle the claim pre-suit in a way that is best for the individual client and ▮▮▮ perhaps inclusive of promises to make changes in the way things are done with the product in the future. This would avoid advertising and a feeding frenzy, get meaningful relief for the client, and benefit ▮▮▮. If something truly becomes a mass tort, if ▮▮▮ would like, I could be an intermediary with the plaintiffs' bar to take care of it before too many copycats became

1

involved.  Before pursuing any new tort, I would clear it with ▓▓▓▓ to make sure it was not a conflict. If not, perhaps being associated with such an important entity might give me some of the best brains in the country to pick.

I am going to suggest we make the following provision for duration of contract. The consulting term shall be for 40 years (although I am not opposed to perpetuity).  During the first five years, consultants agree to provide substantive and expert advice on any matter requested or which consultants identify. I don't want to go to board-type meetings at all unless you insist, I would envision closely advising companies' executives and house counsel on an ad hoc basis as acute problems or potential problems arise.  Still during those first five years (2020-2025) my primary focus, and the majority of my time and work will be on my plaintiffs' injury law practice.  While I would engage fully and seriously with ▓▓▓▓, etc., when needed, I would expect the total active consulting to not to amount to more than a few weeks per year.

At the end of the fifth year, consultants will revert to a far more passive role, to be called upon in emergent situations only. It is contemplated that in many calendar years after 2025, no consulting work is needed at all.  If the closer working relationship of the first five years of the contract was of such sufficient mutual interest that the parties both wish to continue a more active relationship, that period, and level of engagement, may be extended year to year if mutually agreed for an additional payment of $3 million per year to Golden Ratio LLC. Importantly, however, for the entire duration of the contract, I and my law firm and partners would be conflicted out of taking any action or giving any advice adverse to our Consultee.

This agreement would remain completely confidential and not be discussed on our end beyond the group now talking.  I would only disclose it under court order or with the blessing of ▓▓▓▓.

Of course, we are open to tweaks to this proposal and welcome your input.

T